UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| TORRENCE SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 19-cv-02445 (APM) |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, d/b/a AMTRAK | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

Plaintiff Torrence Sanders brings this action against his former employer, National Railroad Passenger Corporation ("Amtrak"), to recover damages under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54. Plaintiff was employed by Defendant Amtrak from April 2011 until May 2016. Plaintiff filed this suit on August 13, 2019, alleging that Defendant unlawfully interfered with his FMLA leave and intentionally retaliated against him for exercising his FMLA rights. Defendant moves to dismiss all counts of the Complaint, asserting that they are time barred. The court agrees that Plaintiff's claims are untimely. Defendant's Motion to Dismiss is therefore granted.

**II.  BACKGROUND**

Plaintiff began working at Amtrak on April 4, 2011, occupying several roles "until his termination on or about May 14, 2016." Compl., ECF No. 1 [hereinafter Compl.], ¶ 10. Between 2013 and 2016, Plaintiff requested, and Amtrak granted, various periods of FMLA leave to care for his wife and child. *Id.* ¶¶ 12–17. Plaintiff alleges that Amtrak frequently classified his FMLA

leave as unauthorized or administrative, which subjected him to penalties, led to temporary cancellation of benefits, hindered his advancement opportunities, and made him "hesitant to use his FMLA in the future." *Id.* ¶¶ 18, 45. Additionally, Amtrak rescinded Plaintiff's promotion in January 2015, citing "too many 'occurrences' . . . [which] included legitimate absences such as FMLA leave." *See id.* ¶¶ 20–26.

In early 2015, Plaintiff filed a complaint with the Department of Labor alleging that "Amtrak had violated his FMLA rights." *Id.* ¶¶ 28–29. Plaintiff alleges that, in retaliation, Amtrak investigated him, charged him with policy violations, suspended him without pay, and, in August 2015, "issued a final warning to him" upon finding him guilty of two workplace violations. *Id.* ¶¶ 35–38. Plaintiff was again suspended in April 2016 when he did not immediately submit to a drug test. *Id.* ¶¶ 39–41. After a hearing on May 5, 2016, "Amtrak decided to terminate Mr. Sanders and sent him a notice of termination." *Id.* ¶ 42. Plaintiff appealed the termination decision to the Public Law Board, which affirmed his dismissal in January 2018. *Id.* ¶ 43.

On August 13, 2019, Plaintiff filed this action. *See generally id.* Count I of the Complaint alleges that Defendant intentionally interfered with Plaintiff's exercise of FMLA rights by misclassifying his leave and subjecting him to penalties. *Id.* ¶ 45. Count II alleges that Defendant intentionally retaliated against Plaintiff by denying him the promotion in 2015 "as a punishment for his use of FMLA leave." *Id.* ¶ 49. Count III also accuses Defendant of intentional retaliation by bringing "exaggerated charges," suspending Plaintiff without pay, and ultimately terminating him "to punish [Plaintiff] for filing the [Department of Labor] complaint" and "as a consequence of using FMLA [leave]." *Id.* ¶¶ 53–56.

Now before the court is Defendant's Motion to Dismiss. Defendant contends that Plaintiff's claims are time barred under the FMLA statute of limitations. *See* Def.'s Mot. to

2

Dismiss, ECF No. 4, Mem. of P&A, ECF No. 4-1 [hereinafter Def.'s Mot.], at 1–2. Plaintiff counters that because the final act of termination occurred in January 2018, when the appeal of his termination was denied, this suit is within the statute of limitations; alternatively, he contends that the doctrines of equitable tolling or equitable estoppel apply to make his suit timely. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 11, Mem. of Law, ECF No. 11-1 [hereinafter Pl.'s Opp'n], at 3–5.[1]

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant the defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.,* 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

In ruling on a motion to dismiss, the court may consider "not only the facts alleged in the complaint, but also . . . any documents appended to a motion to dismiss whose authenticity is

---

[1] The parties also dispute the preclusive effect of the Railway Labor Act ("RLA"), 45 U.S.C. § 151, on the claim in Count III that Plaintiff's termination violated the FMLA. *See* Def.'s Mot. at 8–10; Pl.'s Opp'n at 5–6. Because the court finds that the FMLA's statute of limitations bars all claims, it does not reach the RLA issue.

not disputed, if they are referred to in the complaint and are integral to a claim." *Douglas v. D.C. Hous. Auth.*, 981 F. Supp. 2d 78, 85 (D.D.C. 2013). So long as the "plaintiff's complaint necessarily relies" on the document produced by a defendant in its motion to dismiss, *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009), and the plaintiff does not dispute its authenticity, the court may consider the document without converting the defendant's motion into one for summary judgment, *see Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 323 (D.D.C. 2012).

## IV. DISCUSSION

The FMLA provides eligible employees with up to twelve weeks of time off to care for themselves or family members in certain circumstances, including as relevant here, to care for a spouse or child with a "serious health condition." 29 U.S.C. § 2612(a)(1)(C). To protect those who take FMLA leave from being terminated or otherwise discriminated against, the FMLA makes it unlawful for an employer "to interfere with, restrain, or deny the [employee's] exercise of or the attempt to exercise" FMLA rights, *id.* § 2615(a)(1), or "to discharge or in any other manner discriminate against any individual" exercising those rights, *id.* § 2615(a)(2).

A plaintiff who wishes to bring an FMLA action must do so within three years of "the last event constituting the alleged violation" if the violation was willful, and two years otherwise. *Id.* § 2617(c)(1)–(2). Assuming without deciding that the more forgiving three-year statute of limitations period applies in this case, Plaintiff's claims are timely only if they accrued on or after August 13, 2016—three years before Plaintiff filed his Complaint. Construing the facts liberally and in the light most favorable to Plaintiff, the court finds that all his claims accrued before this date. Plaintiff's claims are therefore untimely.

## A. Counts I and II Are Time Barred

Counts I and II of the Complaint allege that Defendant interfered with Plaintiff's right to FMLA leave and retaliated against him by denying him a promotion. *See* Compl. ¶¶ 44–50. The last event that Plaintiff identifies in support of both counts is the denial of his promotion in January 2015, which occurred over four years before the filing of this action. *See, e.g., id.* ¶ 45 (stating in Count I that Defendant "would claim that [Plaintiff] was out on administrative leave and that it was unauthorized" and that "[t]his interference led to [Plaintiff] being unjustly denied a promotion and hesitant to use his FMLA in the future"); *id.* ¶ 49 (stating in Count II that Plaintiff "was denied a promotion as a punishment for his use of FMLA leave").[2] These allegations thus do not support a plausible claim that any interference or retaliation occurred within the limitations period, that is, on or after August 13, 2016.

Although Plaintiff now argues that Defendant "continued to interfere with [his] FMLA throughout the appeals process," Pl.'s Opp'n at 3, Plaintiff's Complaint provides no factual support for that conclusory statement. Indeed, the allegation first appears in Plaintiff's opposition. Because "[i]t is well established in our Circuit that a plaintiff cannot overcome a motion to dismiss by alleging new facts in her responsive pleading," *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 83 (D.D.C. 2014), the court dismisses Counts I and II.

## B. Count III Is Time Barred and Neither Equitable Tolling Nor Equitable Estoppel Apply

### 1. *Count III Is Time Barred*

Count III alleges that Defendant engaged in a variety of retaliatory conduct that culminated in Plaintiff "ultimately being terminated" from Amtrak. *See* Compl. ¶ 56. Because the statute of

---

[2] Although Plaintiff alleges that he continued to take FMLA leave after he was denied the promotion, *see* Compl. ¶ 16 (stating that Plaintiff requested and was granted leave from 2013 to 2016), Counts I and II do not allege that Plaintiff experienced any interference or retaliation associated with these leave requests, *see id.* ¶¶ 44–50.

limitations period for FMLA claims runs from the "last event constituting the alleged violation," 29 U.S.C. § 2617(c)(1), (2), the timeliness of Count III turns on the date Plaintiff's employment at Amtrak terminated. Plaintiff's Complaint confirms that he was terminated "on or about May 14, 2016"—a full three months before the earliest date Plaintiff's claim could have accrued and been timely filed. *See* Compl. ¶ 10 ("Mr. Sanders . . . was employed with [Amtrak] in various roles until his termination on or about May 14, 2016."); *see also id.* ¶ 42 ("After a hearing on May 5, 2016, Amtrak decided to terminate Mr. Sanders and sent him a notice of termination on or about May 14, 2016."). Accordingly, like Counts I and II, Count III is time barred.

Plaintiff resists this straight-forward conclusion, arguing that "the final act of termination actually occurred when [Plaintiff] lost his appeal on January 10, 2018." *See* Pl.'s Opp'n at 3; *see also* Compl. ¶ 7 (stating that "Plaintiff . . . was an employee of the Defendant, until the appeal of his termination was denied in January 2018"). In support of his argument, Plaintiff notes that the "appeals process is a standard procedure at Amtrak," and that "at least two employees . . . won their appeals and were reinstated," thereby making it "reasonable for Plaintiff to have considered himself still associated and employed with Amtrak during this time period." Pl.'s Opp'n at 3. But whether Plaintiff "reasonably" considered himself still an employee of Amtrak is not the relevant inquiry. Rather, it is whether Plaintiff has plausibly pleaded that he in fact remained an employee of Amtrak pending appeal. He has not.

The limited factual record before the court confirms that Plaintiff's employment ended in May 2016. Amtrak's termination notice to Plaintiff, dated May 13, 2016, informs him that he was "[t]erminated in all capacity, effective immediately." *See* Def.'s Mot., Ex. B, ECF No. 4-3. Likewise, the Public Law Board's decision confirms that he had been "dismissed from Amtrak" on May 13, 2016 "as a direct result of the proven charges." *See* Def.'s Mot., Ex. C, ECF No. 4-4,

6

at 3. Plaintiff's appeal was characterized as "a claim for rescinding [Plaintiff's] termination," *id.* at 1, which the Public Law Board ultimately decided to "uphold[]," *id.* at 5.[3] This unambiguous language leaves no room for doubt that Plaintiff's employment was terminated as of May 2016, not upon conclusion of the appeals process. *See Ashraf-Hassan v. Embassy of France*, 878 F. Supp. 2d 164, 171 (D.D.C. 2012) (holding that a termination "occur[s]" when the decision is communicated and is final); *Sharma v. District of Columbia*, 791 F. Supp. 2d 207, 214 (D.D.C. 2011) ("[A] plaintiff is terminated from employment when she receives 'final, unequivocal, and definite' notice of her termination, even if the effective date occurs later." (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 259 (1980)). Plaintiff's mere "hope[] to be returned to service" and to be "reinstated at the conclusion of the appeal," Pl.'s Opp'n at 3, does not compel a different result.

2.  *Equitable Tolling and Equitable Estoppel Do Not Apply*

Plaintiff urges that, even if the retaliation alleged in Count III occurred more than three years before he filed his complaint, the doctrines of equitable tolling and equitable estoppel prevent Defendant from asserting untimeliness. The court disagrees.

Equitable tolling "allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998). The court's equitable power to toll the statute of limitations is "exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

---

[3] Plaintiff contends that it was "inappropriate" for the Defendant to "to attach exhibits [to its motion to dismiss] that contain information not pled in the Complaint," Pl.'s Opp'n at 5; however, he does not dispute the authenticity of these documents, and they are central to Plaintiff's claims of retaliation. Accordingly, they are appropriately before the court. *See Hinton*, 624 F. Supp. 2d at 46 ("[A] court may consider on a motion to dismiss . . . documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." (internal quotation marks and citation omitted)).

7

In support of his equitable tolling argument, Plaintiff argues that he "has gone through all of the internal requirements of Amtrak to try and resolve this dispute." Pl's Opp'n at 4. The FMLA has no administrative exhaustion requirement, however, *see Simmons* v. *District of Columbia*, 977 F. Supp. 62, 64–65 (D.D.C. 1997), so the mere fact that Plaintiff was pursuing an internal appeal regarding his termination is no basis to toll the FMLA's statute of limitations. *See De. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. The existence of careful procedures to assure fairness in [an employment] decision should not obscure the principle that limitations periods normally commence when the employer's decision is made." (internal citation and footnote omitted)); *see also Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 223 (E.D.N.Y. 2007) (holding that a plaintiff's internal appeal of his employer's decision did not toll the statute of limitations on his FMLA retaliation claim).

Separately, Plaintiff argues that equitable tolling is appropriate because he "knew that if he filed a lawsuit, there would be no chance that he could resume employment." *See* Pls.' Opp'n at 4. Plaintiff offers no factual justification for this argument, however, much less anything to suggest that this fear was "objectively reasonable." *See Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003). Therefore, the court declines to apply the doctrine of equitable tolling.

Plaintiff's invocation of equitable estoppel fares no better. Sometimes called fraudulent concealment, equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998). In support of this argument, Plaintiff states that he "was told on multiple occasions by employees of Amtrak that he was going to win

his case on appeal . . . [and] relied on those representations in not filing a lawsuit." Pl.'s Opp'n at 4. But this fact assertion is found nowhere in Plaintiff's Complaint and comes for the first time in his opposition brief, so the court does not consider it. *See Frett*, 24 F. Supp. 3d at 83 ("It is well established in our Circuit that a plaintiff cannot overcome a motion to dismiss by alleging new facts in her responsive pleading."). Even if the court were to entertain the contention, Plaintiff does not allege that these statements were made by Amtrak management or anyone else authorized to speak on Amtrak's behalf. *Compare Currier*, 159 F.3d at 1365, 1368 (holding that a "high[] ranking management official[']s]" affirmatively misleading statements that an internal grievance would be resolved in the employee's favor "can establish an equitable estoppel"), *with* Pl.'s Opp'n at 4 (stating the representations were made by "employees of Amtrak"). Thus, Plaintiff alleges no facts that plausibly suggest Defendant took "active steps to prevent the plaintiff from litigating in time." *Currier*, 159 F.3d at 1367.

Accordingly, neither doctrine can save Plaintiff's time-barred claims. The statute of limitations began to run on May 13, 2016, over three years prior to this suit.

V.  **CONCLUSION AND ORDER**

For the reasons stated above, Defendant's Motion to Dismiss is granted. Although Plaintiff did not make a specific request, the court will permit Plaintiff to amend his Complaint to attempt to assert timely claims. Plaintiff shall file an amended Complaint no later than March 25, 2020. If Plaintiff does not file an amended Complaint within that time period, the court will enter a final, appealable order dismissing this case.

Dated: March 11, 2020
　　　　　　　　　　　　　　　　　　　Amit P. Mehta
　　　　　　　　　　　　　　　　　　　United States District Judge